IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| ALLIED PROP. CAS. INS. CO. & AMICO INS. CO., : : : Plaintiffs, : : v. : : BLOODWORTH WHOLESALE DRUGS, INC., : : : Defendant. : : | CASE NO.: 7:22-CV-00113 (WLS) |

## ORDER

Before the Court are cross-Motions for Summary Judgment by (Doc. 32) Plaintiffs Allied Property & Casualty Insurance Company ("Allied") and AMCO Insurance Company ("AMCO") and by Defendant Bloodworth Wholesale Drugs, Inc. ("Bloodworth") (Doc. 31), both filed on August 28, 2023.

## RELEVANT BACKGROUND & FACTS

The following facts are derived from Plaintiffs' Complaint, Plaintiffs' Motion for Summary Judgment, Defendant's Motion for Summary Judgment, Plaintiffs' Response in Opposition, Defendant's Response in Opposition, Plaintiffs' Reply, Defendant's Reply, and the Parties joint statement of stipulated facts, and record in this case that have been properly cited to and supported by evidence. Where relevant, the factual summary contains undisputed and disputed facts derived from the pleadings, the materials on the record, and attached exhibits. All evidence, the record, and any inferences arising therefrom are construed in a light most favorable to the nonmoving Party.

Defendant Bloodworth is a local pharmacy distributor in Tifton, Georgia, that supplies and distributes generic pharmaceuticals and prescription drugs, including opioids. (Doc. 31-1, at 5). Amid the nationwide opioid crisis, Defendant Bloodworth was named as a

1

defendant[1] in twenty-six (26) opioid lawsuits that were initiated between 2017 and 2019 by various county and municipal government entities, hospital organizations, and medical management companies ("underlying opioid lawsuits"). (Doc. 28, at 18–21). All complaints in the underlying opioid lawsuits are similar in nature in that those complaints allege that pharmaceutical distributors, like Bloodworth, failed to monitor for, investigate, report, and stop suspicious orders of opioid medications and that such failure contributed to the opioid crisis. (Doc. 32-1, at 4); (Doc. 14, at 14). In particular, seventeen (17) of the twenty-six (26) complaints allege that plaintiffs are not seeking damages for personal injury or property damage; instead, those plaintiffs seek reimbursement from defendants, like Bloodworth, for costs associated with efforts in eliminating the hazards of the opioid epidemic to public health and safety. (Docs. 14-3; 14-5; 14-14; 14-16; 14-18; 14-21; 14-23). The other nine (9) complaints also describe the plaintiffs' damages as economic losses, economic harm, or economic costs incurred because of defendants' marketing and unlawful diversion of prescription opioids. (Docs. 14-17; 14-9; 14-11; 14-12; 14-13; 14-20).

    Following the commencement of the underlying opioid lawsuits, Defendant Bloodworth reported the litigation to its insurers, Plaintiffs Allied and AMCO, to recover its costs for the lawsuits. From May 31, 2006, to May 31, 2018, Plaintiff Allied had issued to Defendant Bloodworth the following Commercial General Liability insurance policy ("GCL Policy") for consecutive one-year periods: ACP GLPO 7102204036, ACP GLPO 7112204036, ACP GLPO 7122204036, ACP GLPO 7132204036, ACP GLPO 7142204036, ACP GLPO 7152204036, ACP GLPO 7162204036, ACP GLPO 7172204036, ACP GLPO 7182204036, and ACP GLPO 7192204036. (Doc. 28, *Stipulation of Facts*, at 1). Subject to all their terms and conditions, the CGL Policy provides limits of liability of $1,000,000 for each occurrence, subject to a general aggregate limit per policy period of $2,000,000. (*Id.*) During the same time period, Plaintiff AMCO had also issued to Defendant Bloodworth the following Umbrella Liability insurance policy ("Umbrella Policy") for consecutive one-year periods: ACP CAA 7102204036, ACP CAA 7112204036, ACP CAA 7122204036, ACP

---

[1] Majority of complaints of the underlying opioid lawsuits were initiated in Georgia federal and state courts but have been subsequently transferred to the multi-district litigation in the Northern District of Ohio. (Doc. 14, at 12–14).

CAA 7132204036, ACP CAA 7142204036, ACP CAA 7152204036, ACP CAA 7162204036, ACP CAA 7172204036, ACP CAA 7182204036, and ACP CAA 7192204036. (*Id.* at 1–2). Subject to all of their terms and conditions, the Umbrella Policy provides limits of liability of $5,000,000 for each occurrence per policy period, above the limits of the underlying insurance in the CGL Policy. (*Id.* at 2).

The CGL Policy provides in relevant part:

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'. . . to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result….

    b. This insurance applies to 'bodily injury' and 'property damage' only if:

        (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory';

        (2) The 'bodily injury' or 'property damage occurs during the policy period; . . .

(Doc. 28, at 2–4).

The CGL Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*Id.* at 3). The CGL Policy also defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 4). Furthermore, the CGL Policy further states that "[d]amages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'" (Doc. 14-1, at 13, § I.1.(e)).

Next, the Umbrella Policy issued by Plaintiff AMCO provides similar language, which states, in relevant part:

A.1. . . . we will pay on behalf of the 'insured' that part of 'loss' covered by this insurance in excess of the total applicable limits of 'underlying insurance,' provided the injury or offense takes place during the Policy Period of this policy. The terms and conditions of 'underlying insurance'

3

> are, with respect to Coverage A, made a part of this policy except with respect to:
> a. Any contrary provision contained in this policy; or
> b. Any provision in this policy for which a similar provision is not contained in 'underlying insurance.'
>
> . . .
>
> B.1. . . . we will pay on behalf of the "insured" damages the "insured" becomes legally obligated to pay by reason of liability imposed by law because of "bodily injury", "property damage", or "personal and advertising injury" covered by this insurance which takes place during the Policy Period and is caused by an "occurrence". We will pay such damages in excess of the Retained Limit Aggregate specified in the Declarations or the amount payable by "other insurance," whichever is greater.

(Doc. 14-2, at 9, §§ A-B).

In sum, coverage is available under the CGL and Umbrella Policies ("Policies") if the allegations in the underlying opioid lawsuit seek "damages because of 'bodily injury'" within the meaning of the Policies. (*Id.* at 2). The Policies note that Plaintiffs have "no duty to defend [Defendant Bloodworth] against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply." (*Id.*)

At the current stage of summary judgement briefing, the Parties have stipulated that the only issue[2] before the Court is whether economic losses or costs for providing medical care, additional therapeutic and prescription drug purchases, and other treatments for patients suffering from opioid-related addiction or disease, for counseling, treatment, and rehabilitation services, alleged in the underlying opioid lawsuits constitute a "bodily injury" under the CGL Policy and Umbrella Policy, such that Plaintiffs have to defend Defendant Bloodworth in the twenty-six (26) underlying opioid lawsuits. (Doc. 28, at 9, ¶ 24); (Doc. 31-1, at 2); (Doc. 32-1, at 1 n.1).

---

[2] The Court permitted the Parties to bifurcate the coverage issues in two phases of summary judgment briefing. (Doc. 23). The instant Motions for Summary Judgment (Docs. 31; 30) filed by both Parties are from the first phase of summary judgment briefing and only on the issue of whether the underlying opioid lawsuits seek damages because of bodily injury, as those terms are used in the CGL and the Umbrella Policies.

## **STANDARD OF REVIEW**

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Chow v. Chak Yam Chau*, 555 F. App'x 842, 846 (11th Cir. 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)). "'A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.'" *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citation omitted). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by citing to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet that burden by presenting evidence showing there is no dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322–24.

After the movant has met their burden, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (citation omitted). The nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. The nonmoving party must produce evidence, going beyond the pleadings, and by its own affidavits, depositions, answers to interrogatories, or admissions on file that designate specific facts which would suggest that a reasonable jury

5

could find in the nonmoving party's favor. *L.S. by Hernandez v. Peterson*, 420 F. Supp. 3d 1307, 1314 (S.D. Fla. 2019). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Vicks v. Knight*, 380 F. App'x 847, 851 (11th Cir. 2010) (citation omitted). To avoid summary judgment, the nonmovant must point to evidence in the record that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form").

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Matsushita*, 475 U.S. at 587–88; *Allen*, 121 F.3d at 646. The Court, however, must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C). "The principles governing summary judgment do not change when the parties file cross-motions for summary judgment. When faced with cross-motions, the Court must determine whether either of the parties deserves judgment as a matter of law on the undisputed facts." *PI Telecom Infrastructure, LLC v. City of Jacksonville, Fla.*, 104 F. Supp. 3d 1321, 1336 (M.D. Fla. 2015).

Moreover, declaratory judgment actions seeking a declaration regarding insurance coverage may be decided on summary judgment "when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1358 (M.D. Fla. 2001).

In addition, the Court's Local Rule 56 also requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56. Here, the Court finds both Plaintiffs and Defendant have complied with the Court's Local Rule. (Docs. 31-3; 32-5; 35-1; 36-1).

## DISCUSSION

The issue is whether economic losses or costs sought in the underlying opioid lawsuits against Defendant Bloodworth constitute "because of bodily injury," as defined in the Policies, such that Plaintiffs Allied and AMCO must provide coverage for the underlying opioid lawsuits.

It is Defendant Bloodworth's contention that allegations in the underlying opioid lawsuits constitute "damages because of 'bodily injury,'" and so, Plaintiffs must provide coverage for the underlying lawsuits against it. (Doc. 31, at 8). Bloodworth argues that Georgia courts have found the phrase "damages because of bodily injury" to be ambiguous, and when a phrase is ambiguous, it must be construed against the drafters. (*Id.* at 9). Bloodworth also contends that "because of bodily injury" can be interpreted in more than one way and could be—and thus, here, should be—broadly interpreted to mean "by reason of" or "account of." (*Id.* at 10). Bloodworth argues that economic loss or costs sought in the underlying lawsuits stemmed from some form of bodily injuries or sicknesses to some people because of opioids; thus, according to the Policies, Plaintiffs Allied and AMCO must provide coverage for the underlying opioid lawsuits.

On the other hand, Plaintiffs contend that the language of the Policies and Georgia law both demonstrate that coverage need not be provided for the underlying opioid lawsuits. (Doc. 32-1, at 2). Plaintiffs contend that none of the twenty-six (26) complaints in the underlying opioid lawsuits are seeking damages or relief for an actual, particular bodily injury to a specific person(s); instead, the plaintiffs in the underlying opioid lawsuits are local governmental entities and healthcare providers that are seeking costs and monies that they have spent in providing services and treatments from dealing with the opioid epidemic. (*Id.* at 20). Plaintiffs also argue that the language of their Policies requires the insured to report or prove a particular bodily injury for coverage to be provided pursuant to the Policies, which Defendant has not so pleaded in this case. (*Id.* at 12). Specifically, Plaintiffs contend that the CGL Policy contains number of conditions precedent for coverage, such as providing notice to the insurer concerning how, when, and where the occurrence took place,

the names of injured people and witnesses, and the nature or location of the injury arising out of that occurrence. (*Id.* at 14). Additionally, Plaintiffs contend that even if the Court decides to use Defendant Bloodworth's broad interpretation of "because of bodily injury" to mean "by reason of" or "on account of," under Georgia law, the term "damages because of 'bodily injury'" still requires a connection between a particular bodily injury and damages sought. (*Id.* at 19–20). Plaintiffs emphasize that allegations in the underlying opioid lawsuits are not seeking relief for particular or actual bodily injuries—rather, those plaintiffs seek to recover costs or monies that they spent in providing treatments, services, and programs to abate the opioid epidemic. (*Id.* at 21–22).

The Court shall first address whether the term "because of bodily injury," as used in the Policies in the instant case, is ambiguous under Georgia law. Then, the Court shall assess the provisions and the language of the Policies. Lastly, the Court shall address the ultimate issue: whether the costs or economic losses— which initially stemmed from some form of injuries, sickness, or deaths of unspecified/various individuals affected by the opioid epidemic—constitute "damages because of 'bodily injury'" as provided in the Policies, such that Plaintiffs must provide coverage for the underlying opioid lawsuits against Defendant Bloodworth.

For reasons further stated below, Plaintiffs' Motion for Summary Judgment (Doc. 32) is **GRANTED**, and Defendant Bloodworth's Motion for Summary Judgment (Doc. 31) is **DENIED**.

### I. "Because of Bodily Injury" as Used in the Policies, in the Instant Case, Is Not Ambiguous under Georgia Law.

To begin, contrary to Defendant's argument, the Court does not find the term "because of bodily injury" in the Policies in the above-styled matter to be ambiguous.

#### A. Georgia Law on "Ambiguous" Policy Provisions

Here, both Parties agree that Georgia law applies in this case. (Docs. 32; 31). Generally, Georgia law treats insurance as a matter of contract, and construction of an insurance contract is a question of law. *Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 73 F.4th 934, 941 (11th Cir. 2023); *Elan Pharm. Rsch. Corp. v. Emps. Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998). If the policy language is not ambiguous, the insurance contract must be

8

enforced according to its plain terms. *Ace Am. Ins. Co. v. Wattles Co.*, 930 F.3d 1240, 1252 (11th Cir. 2019) (internal citation omitted). Conversely, if an insurance policy is ambiguous, it is construed "strictly" against the insurer/drafter and in favor of the insured. *Id.* (citation omitted). Under Georgia law, a provision is ambiguous if it is "subject to more than one reasonable interpretation." *Id.* (internal citation omitted). Otherwise stated, a provision is ambiguous if its meaning is uncertain and could be understood in more ways than one way, such that the provision is susceptible to two or more reasonable interpretations. *Id.* To be clear, an insurance policy is not ambiguous simply because it is possible to construe it more than one way or because it requires analysis to interpret it. *Id.* at 1254; *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014). A provision is ambiguous if the policy <u>must</u> be "fairly understood" in more than one way because there is more than one reasonable interpretation of it. *Ace Am. Ins. Co*, 930 F.3d at 1254 (internal citation omitted) (quotation marks omitted) (emphasis added). In other words, a policy provision is ambiguous if <u>all</u> its multiple constructions are logical and reasonable, provided the trial court cannot resolve the conflicting interpretations by applying the rules of contract construction. *See id.* at 1252–53 (internal citation omitted) (quotation marks omitted) (emphasis added); *see also Auto-Owners Ins. Co. v. Barnes*, 373 S.E.2d 217, 219 (Ga. Ct. App.1988) (providing in part that no ambiguity exists if a trial court can ascertain the true intention of the parties via pertinent rules of construction).

Moreover, in Georgia, the "cardinal rule" of construction is to "ascertain the intention of the parties," when it is possible to do so. *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, 522 F. Supp. 3d 1279, 1284 (N.D. Ga. 2021) (citing O.C.G.A. § 13-2-3) ("If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction."); *Ace-Am. Ins. Co.*, 930 F.3d at 1254. In addition, courts must analyze the contract as whole, not merely as isolated clauses and provisions. *Gilreath Fam. & Cosm. Dentistry, Inc.*, 522 F. Supp. 3d. at 1284 (citations omitted). Courts must interpret the contract in a manner that gives the greatest effect possible to all provisions and avoids rendering any of the provisions meaningless. *Id.* (citations omitted) ("The underlying principle is that the contract must be read 'reasonably' and 'in a way that does not lead to an absurd result.'").

9

Importantly, courts have "no right" to make a policy "more beneficial by extending. . . coverage" where none exists. *Gilreath Fam. & Cosm. Dentistry*, 522 F. Supp. 3d at 1285 (citing *Woodmen of World Life Ins. Soc. v. Etheridge*, 154 S.E.2d 369, 426 (Ga. 1967)).

"Whether an insurer is obligated to defend an action against its insured is determined by the contract." *Meritage Homes of Ga., Inc. v. Grange Ins. Co.*, 528 F. Supp. 3d 1312, 1319 (N.D. Ga. 2021) (citing to *Yeomans & Assocs. Agency, Inc. v. Bowen Tree Surgeons. Inc.*, 618 S.E.2d 673, 677 (Ga. Ct. App. 2005)). In determining whether an insurer has a duty to defend a particular lawsuit, courts compare the allegations of the complaint against the provisions of the insurance contract. *Elan Pharm.*, 144 F.3d at 1375. A party claiming coverage under an insurance policy—here, Defendant Bloodworth—has the burden of showing that the claim is covered by the policy. *Cont'l Cas. Co. v. Synalloy Corp.*, 667 F. Supp. 1550, 1555 (S.D. Ga. 1985) (citing *Chix v. Ga. Farm Bureau Ins. Co.*, 258 S.E.2d 208 (Ga. Ct. App. 1979)). And the insurers—here, Plaintiffs Allied and AMCO—have the burden to show that said claim is precluded by a contract exclusion. *Darby v. Interstate Life & Acc. Ins. Co.*, 130 S.E.2d 360, 361 (Ga. Ct. App. 1963). Insurers are "free to insure against certain risks while excluding others." *Ga. Farm Bureau Mut. Ins. Co. v. Smith*, 784 S.E.2d 422, 424 (Ga. 2016) (citation omitted) (quotation marks omitted).

### B. "Damages Because of 'Bodily Injury'" Is Not Ambiguous as Used in the CGL and Umbrella Policies.

Contrary to Defendant Bloodworth's argument, the Court does not find the term "damages because of 'bodily injury,'" as used in the Policies in the above-styled matter, ambiguous. Defendant argues that Georgia courts have held "because of 'bodily injury'" is ambiguous, and thus, the term used in the Policies in the instant case is also ambiguous. However, the Court finds that a review of Georgia cases show that Georgia courts have not held that the provision, "damages because of bodily injury," is mechanically or automatically ambiguous, as argued by Defendant. *See e.g.*, *Lunceford v. Peachtree Cas. Ins. Co.*, 495 S.E.2d 88, 90–91 (Ga. Ct. App. 1997).

First, in Georgia, whether the provision "because of bodily injury" is ambiguous depends on the facts, circumstances, and the issue of the case. *E.g.*, *Lunceford*, 495 S.E.2d at 89–91 (finding the insurance policy term "because of bodily injury" as ambiguous, wherein

10

the issue of Lunceford case was whether the provision covered punitive damages, the claimant in that case was injured and his property was damaged, and the provision could be interpreted to mean either "equivalent to" or "by reason of"/"on account of" bodily injury in light of the facts of Lunceford). Indeed, the Court of Appeals of Georgia noted that "even a word of common understanding and usage may be ambiguous depending on the context in which it is used." *Hope Elec. Enter., Inc. v. Schindler Elevator Corp.*, 752 S.E.2d 5, 8 (Ga. Ct. App. 2013). Notably, "ambiguity is not to be created by lifting a clause or portion of the contract out of context, nor are [the courts] to call forth doubt or make hypercritical constructions." *Payne v. Middlesex Ins. Co.*, 578 S.E.2d 470, 472 (Ga. Ct. App. 2003) ("The language of the contract in its entirety should be given a reasonable construction, not beyond that fairly intended within its terms."); *Ace Am. Ins. Co. v. Wattles Co.*, 930 F.3d 1240, 1253 (11th Cir. 2019) (citing *Payne*, 578 S.E.2d at 472).

      Second, Georgia courts have made clear that the provision "because of 'bodily injury,'" when used in an insurance policy, "means just that—'bodily injury.' It pertains to physical injury of the body. It does not include non-physical, emotional, or mental harm." *Presidential Hotel v. Canal Ins. Co.*, 373 S.E.2d 671, 672 (Ga. Ct. App. 1988). Simply put, if a plaintiff is not seeking damages for <u>actual physical</u> harm, it would not be covered under the policy provision "because of 'bodily injury.'" *Id.* at 672–73 (emphases added*); O'Dell v. St. Paul Fire & Marine Ins. Co.*, 478 S.E.2d 418, 420 (Ga. Ct. App. 1996) (finding that the policy provision "because of bodily injury" did not cover plaintiff's damages for emotional harm because plaintiff did not allege that the nonphysical harm actually resulted from a physical injury, and the court held that the provision only "pertains to physical injury to the body. . . [and] cannot be equated with a broader term 'personal injury'"). Moreover, regardless of which interpretation of the provision is used—either "equivalent to" or "by reason of/on account of"—the provision, "because of 'bodily injury,'" requires a <u>connection</u> to a particular, alleged <u>physical, bodily injury</u> of a person(s). *Pac. Emps. Ins. Co. v. Cesnik*, 219 F.3d 1328, 1331–32 (11th Cir. 2000) (emphases added) (finding that the plaintiffs' damages for breach of contract did not constitute an actual claim for damages "on account of" a physical bodily injury, and thus, the nonphysical damages sought did not constitute damages either "by reason of" or "on account of" a particular bodily injury").

11

Here, upon review of the Parties' briefs (Docs. 31; 32), their Responses (Docs. 35; 36; 39; 40), attached exhibits, and relevant record, the Court finds that, in view of the circumstances and the complaints of the twenty-six (26) underlying opioid lawsuits—wherein the plaintiffs are seeking nonphysical related, monetary damages—in light of the issue presented before the Court, the provision "because of bodily injury" as used in the Policies is not ambiguous. Specifically, the provision, "damages because of 'bodily injury,'" as used in the Policies, means damages because of a particular physical bodily injury of individual(s). Therefore, the Court finds damages "because of 'bodily injury'" only covers damages sought for particular bodily injury, or damages that directly resulted from a particular physical bodily injury. This is because Georgia law makes it clear that the policy provision "because of bodily injury" requires a particular "physical injury of the body" to a person to trigger coverage, and the provision does not include "nonphysical, emotional, or mental harm." *Presidential Hotel*, 373 S.E.2d at 672. Here, the complaints in the underlying opioid lawsuits seek to recoup or recover economic losses or monies that they spent in attempting to eliminate "the hazard to public health and safety caused by the opioid epidemic," which plaintiffs in those lawsuits allege was caused by Defendant's "false, deceptive, and unfair marketing and/or unlawful diversion of prescription opioids." (Docs. 1-4; 1-6; 1-8; 1-10; 1-12; 1-13; 1-14; 1-15; 1-17; 1-19;1-21). The plaintiffs in the underlying opioid lawsuits allege no specific physical injury to themselves or on behalf of any person, as the plaintiffs are seeking economic losses or costs that they expended in providing treatment, counseling, and various services to abate the opioid epidemic. (Docs. 1-4; 1-6; 1-8; 1-10; 1-12; 1-13; 1-14; 1-15; 1-17; 1-19;1-21). Therefore, the Court finds that the nonphysical damages sought by plaintiffs in the underlying opioid lawsuits are not covered under the term "bodily injury."

Further, the Court finds that a fair contextual reading of the Policies as a whole also shows the provision is not ambiguous. *Gilreath Fam. & Cosm. Dentistry, Inc.*, 522 F. Supp. 3d. at 1285 ("Courts also analyze the contract as whole (not merely isolated clauses and provisions) . . . ."). Additionally, if a provision is not ambiguous, it must be enforced according to its plain terms and as written. *Ace Am. Ins. Co.*, 930 F.3d at 1252.

12

Here, upon finding that the provision "because of 'bodily injury'" is not ambiguous, and in view of the Policies as whole, the Court finds that the Policies seek to limit the provision "because of 'bodily injury'" to just that—bodily or physical injury of individual(s) that happened as an "occurrence" as defined in the Policies. Therefore, the Court does not find that the economic losses sought in the underlying opioid lawsuits fall within the provision "because of 'bodily injury,'" as those economic losses are unconnected to an occurrence involving bodily injury to an identified person(s), and thus, do not trigger coverage from the Policies.

## II. Viewing the Policies' "Because of Bodily Injury" Together with "Occurrence"

As background, following the Parties' submission of their instant Motions for Summary Judgment (Docs. 31; 32), the Court ordered both Parties to file a no more than seven-page brief on whether, if, or how the term "occurrence"[3]—as used in the Policies—affects or impacts the provision "because of 'bodily injury,'" because the Court must, after all, ultimately interpret the provisions of the Policies as whole. (Doc. 41). The Court emphasized that it was not asking the Parties to fully brief on the term "occurrence"; rather, the Court simply wanted to consider their views on if and how the term "occurrence" in the Policies might affect the provision "because of 'bodily injury.'" (*Id.*)

As noted *supra*, the Policies in the instant case provide that coverage applies to bodily injury "only if . . . the 'bodily injury'. . . is caused by an 'occurrence' that takes place in the 'coverage territory' . . . ." (Doc. 28, at 3). The Policies also define "occurrence" as "an <u>accident</u>, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 4) (emphasis added).

---

[3] As noted above, the CGL Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time"; and "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions"; and "damages because of 'bodily injury'" as including "damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'" (Doc. 28, at 3–4); (Doc. 14-1, at 13, § I.1.(e)).

13

Also noted above, in Georgia, the insured has the burden to prove the claim is covered by the policy, while the insurer has the burden to prove that a claim is precluded by the policy. *Cont'l Cas. Co.*, 667 F. Supp. at 1555; *Darby*, 130 S.E.2d at 409.

In its Response (Doc. 43), Defendant Bloodworth stated that it does not necessarily think "occurrence" modifies or affects the provision "damages because of bodily injury." Defendant also contends that determining what constitutes damages "because of bodily injury" is a "condition precedent" to "occurrence"; otherwise stated, Defendant argues that the Court should first determine whether the claims in the underlying opioid lawsuits constitute bodily injury and then determine whether those claims constitute "occurrence." (*Id.*)

On the other hand, Plaintiffs Allied and AMCO contend that a review of the Policies' language as well as Georgia authority indicates that the term "occurrence" does impact or affect the provision "because of 'bodily injury.'" (Doc. 44). Plaintiffs also contend that the term "occurrence" further shows that the economic losses sought by the plaintiffs in the underlying opioid lawsuits do not constitute "because of 'bodily injury,'" as required by the Policies. (Doc. 44). This is because Plaintiffs contend that their CGL Policy does not cover injuries arising from "intentional acts," even if the resulting injury is not foreseen by the insured, because "occurrence" is defined as "an accident." (*Id.*) Plaintiffs argue that there are no allegations in the underlying opioid lawsuits that allege or indicate that Defendant Bloodworth mis-filled or accidentally filled prescriptions. (*Id.*) Instead, the complaints of the underlying opioid lawsuits allege that Defendant filled opioid prescriptions and failed to report suspicious orders, as required by law. (*Id.*) Plaintiffs also contend that viewing the provision "damages because of 'bodily injury'" with the term "occurrence" further demonstrates that a particular bodily injury is necessary to trigger coverage under the Policies, because absent a specific injury, it would be difficult to determine if a bodily injury happened during the policy period or was even caused by an "occurrence" within the coverage territory. (*Id.*) Additionally, in their Motion for Summary Judgment (Doc. 32-1), Plaintiffs point to the declaration of their managing counsel, wherein the counsel explains that the insured must notify the insurer in the event of the "occurrence" or offense, and provide information as to "[h]ow, when, and where the 'occurrence' or offense took place";

14

the "names and addresses of any injured persons and witnesses"; and the "nature and location of any injury or damage arising out of the 'occurrence' or offense." (Doc. 32-2, at 38).

Upon review, the Court agrees with the Plaintiffs. Here, the Policies provide that Plaintiffs have "no duty to defend [Defendant Bloodworth] against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply." (Doc. 14-2, at 9, §§ A-B); *see also Am. Nat. Prop. and Cas. Co. v. Amerieast, Inc.*, 677 S.E.2d 663, 668 (Ga. Ct. App. 2009) ("[T]he purpose of the exclusion is to exclude certain coverage that might otherwise exist. In other words, as to the exclusion, the policy expressly provides that 'it does not apply.'") (citing *Auto-Owners Ins. Co. v. Barnes*, 373 S.E.2d 217, 219 (Ga. Ct. App. 1988)) ("a limited or specific provision will prevail over one that is more broadly inclusive") (citations omitted).

In Georgia, to establish a coverage under a policy of insurance exists for a claim, that claimant, here Defendant Bloodworth, "must show the occurrence was within the risk insured against." *Travelers Home and Marine Ins. Co. v. Castellanos*, 773 S.E.2d 184, 186 (Ga. 2015). Here, the Court agrees with Plaintiffs and does not find that the opioid epidemic constitutes "occurrence," as used in the Policies. To find otherwise would mean that the provision "occurrence" can be expanded or stretched to cover essentially all and any damage that stems from the epidemic. The plaintiffs in the underlying opioid lawsuits are alleging, in part, that Defendant Bloodworth distributed, marketed, and placed opioids into the stream of commerce without fulfilling its duty to prevent diversions and report suspicious orders. (*E.g.*, Doc. 14-5, at 7). Such alleged conducts do not fit the definition of "occurrence," which the Policies define as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 28, at 4). The plaintiffs (i.e., healthcare providers, governmental entities, etc.) in the underlying opioid lawsuits are third parties, who are seeking economic losses and costs that they had to expend in abating the opioid epidemic. Upon review, the Court finds that Plaintiffs Allied and AMCO are not obligated under the terms of the Policies to pay or to cover for these nonphysical damages sought by the underlying lawsuits' plaintiffs.

The Court disagrees with Defendant Bloodworth's argument that there is or seems to be some sort of connection between the monetary damages sought in the underlying opioid lawsuits and the Policies' provision "because of 'bodily injury.'" The Court finds that there is no such connection actually shown or alleged in the complaints of the underlying opioid lawsuits. Accepting Defendant's argument would essentially mean that there is no limitation to the provision "because of 'bodily injury,'" as Defendant seeks to back-load the economic losses sought in the underlying opioid lawsuits, by contending that the nonphysical, economic losses trigger coverage under the provision "because of 'bodily injury'" because the costs stems from, no matter how tenuous, some harm and deaths of unspecified people caused by opioids.

Thus, when assessing the provision "because of 'bodily injury'" in light of the term "occurrence," as used in the Policies in this case, the Court agrees with Plaintiffs and finds that the Policies cover physical bodily injuries, which happened as an "occurrence" within the coverage territory. And the Court finds that economic losses or damages sought by the governmental entities and healthcare providers in the underlying opioid lawsuits are not connected to any particular, physical, bodily injury. In other words, <u>actual</u>, particular physical bodily injury is necessary to give rise to coverage under Plaintiffs' Policies.

Furthermore, the Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Doc. 28, at 3). This also sheds light on what is and is not covered under the Policies. The Court finds that it is clear that damages for economic losses sought against Defendant Bloodworth in the underlying opioid lawsuits is not covered under the provision "because of 'bodily injury,'" especially when viewing the Policies as whole. In Georgia, insurers are "free to insure against certain risks while excluding others," and the Court is not at liberty to make a policy provision "more beneficial" to any particular party by extending coverage where none exists. *Ga. Farm Bureau Mut. Ins. Co.*, 784 S.E.2d at 424; *Gilreath Fam. & Cosm. Dentistry, Inc.*, 522 F. Supp. 3d. at 1284 (citations omitted). The Court's obligation is to interpret the Policies in a way that gives the "greatest effect possible to all provisions and in a way that avoids rendering the provisions meaningless. *Gilreath Fam. & Cosm. Dentistry, Inc.*, 522 F. Supp. 3d. at 1284. For these reasons, it is not ambiguous what damages Plaintiffs Allied and AMCO

16

agreed to provide coverage for under the Policies. In sum, the Court finds that Plaintiffs met their burden of showing that no genuine dispute of material fact exists as to whether the economic losses sought in the underlying opioid lawsuits are precluded by the Policies, while Defendant failed to meet its burden of showing that no genuine dispute of material fact exists as to whether the economic costs sought in the underlying opioid lawsuits are covered by the Policies. *Cont'l Cas. Co.*, 667 F. Supp. at 1555; *Darby*, 130 S.E.2d at 409. Accordingly, the Court finds that there is no genuine dispute of material fact as to whether the provision "because of 'bodily injury'" provides coverage for nonphysical damages, such as economic losses, sought by healthcare providers and governmental entities for having provided various treatments, services, and programs to combat and abate the opioid epidemic in the underlying opioid lawsuits. To be clear, the Court, by this Order, finds only that economic damages, that are not connected to a specific individual who suffered physical bodily injury, are not covered by the Policies at issue in the above-styled matter. Therefore, Plaintiffs Allied and AMCO's Motion for Summary Judgment (Doc. 32) is **GRANTED** and Defendant Bloodworth's Motion for Summary Judgment (Doc. 31) is **DENIED**

## CONCLUSION

For the aforementioned reasons, Plaintiffs' Motion for Summary Judgment (Doc. 32) is **GRANTED**, and Defendant's Motion for Summary Judgment (Doc. 31) is **DENIED**.

**SO ORDERED**, this 27th day of March 2024.

          /s/ W. Louis Sands
          **W. LOUIS SANDS, SR. JUDGE**
          **UNITED STATES DISTRICT COURT**